**Opinion issued June 15, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00485-CR

_____

**ROY CASTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1577118**

---

## MEMORANDUM OPINION

A jury convicted appellant, Roy Castillo, of the third-degree felony offense of escape from custody while charged with a felony offense, and it sentenced him to the minimum twenty-five years' confinement under the habitual felony offender statute. *See* TEX. PENAL CODE §§ 38.06(a)(1), (c)(1), 12.42(d). In two issues, Castillo

argues that: (1) the trial court abused its discretion under Texas Rules of Evidence 403 and 404 in admitting evidence of extraneous offenses at the guilt-innocence phase of his trial; and (2) trial counsel was ineffective for failing to object to admission of the extraneous offense evidence.

We affirm.

## Background

Castillo was indicted for the third-degree felony offense of escape from custody while charged with a felony offense, namely robbery. *See* TEX. PENAL CODE § 38.06(a)(1), (c)(1). At trial, Houston Police Department (HPD) Officer K. Tabora testified that he and his partner, T. Williams, escorted Castillo, who was in custody, to the hospital for injuries and guarded Castillo while there. While at the hospital, Castillo asked to use the restroom. Tabora walked Castillo, who was handcuffed and limping from his injuries, down the hall to the restroom. Before Castillo went inside, Tabora uncuffed Castillo's hands. Upon emerging from the restroom, Castillo sprinted away. Tabora pursued Castillo, telling him to stop running. Officer Williams also chased after Castillo, and the officers followed him into a hospital parking garage. Tabora never lost sight of Castillo, who was caught shortly thereafter in the parking garage.

Prior to trial, Castillo filed a motion in limine. The motion targeted, in relevant part, any "direct or indirect evidence related to the Defendant's prior criminal

2

history"; any "direct or indirect evidence of extraneous offenses listed in the State's 'Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses' including pending offenses"; any "testimony by state's witnesses that Defendant's warrant was for the offense of Robbery"; and any "mention of the nature of the felony warrant that was pending[.]" The motion stated,

> The above matters [] should not be mentioned unless and until the State's attorney first approaches the bench and makes known to the Court and the Defendant, outside the presence of the jury, that she intends to offer such proof, thus permitting the jury to be retired and the evidence and objections heard, and the Court to rule on the admissibility of such evidence.

At the beginning of the guilt-innocence phase of trial, the trial court heard Castillo's motion in limine. Defense counsel stated that "what we want to limine out is the indictment," such that the word "robbery" would not be used when the State read the indictment.[1] Defense counsel argued that, to satisfy Penal Code section 38.06, the State needed to show only that there was a felony warrant pending when Castillo escaped from custody but did not need to show the nature of the underlying felony offense. *See* TEX. PENAL CODE § 38.06(a)(1) ("A person commits an offense if the person escapes from custody when the person is . . . under arrest for, lawfully

---

[1] The indictment alleged that "in Harris County, Texas, ROY CASTILLO, hereafter styled the Defendant, heretofore on or about January 17, 2018, did then and there unlawfully, intentionally and knowingly escape from the custody of K. Tabora, a peace officer employed by Houston Police Department, while charged with a felony offense, namely, Robbery."

detained for, charged with, or convicted of an offense . . . ."). According to defense counsel, revealing the nature of the underlying felony was irrelevant under Texas Rule of Evidence 401 and unduly prejudicial under Texas Rule of Evidence 403.

For these same reasons, defense counsel further argued that the State should "admonish their officers" not to "say the nature of that warrant while testifying to the jury." The prosecutor agreed that "it's good to give an admonishment to the officers, telling them not to talk about the robbery or not. It's always good to remind them." The trial court verbally prohibited the State and its witnesses from using the word "robbery," although it allowed reference to a felony warrant generally. The court further granted the State's request to subsequently seek a ruling if the robbery became relevant. The court also entered a written order granting Castillo's motion in limine.

The State did not mention robbery when it read the indictment. However, on direct examination, Tabora testified that two officers escorted Castillo to the hospital, instead of the typical single-officer escort, "[b]ecause Roy Castillo had shown that he was a flight risk because he had previously evaded on foot." The State did not follow up on Tabora's statement but instead moved on to the events that had occurred at the hospital. Defense counsel did not object to this statement.

After Tabora testified, the State called HPD Officer C. Farmer, who arrested Castillo for open warrants and took him into custody prior to Tabora transporting

4

Castillo to the hospital. Just as Farmer began his testimony and introduced himself, the State said, "Just to be clear, I know that my colleague here approached you. Just to be clear, what she told you was don't mention anything about the actual offense with the robbery; is that right?" Farmer responded, "That's correct." Defense counsel did not object to the State's comment. Robbery was not mentioned again during the guilt-innocence phase of trial.

The jury convicted Castillo of escaping from custody. At Castillo's election, the jury considered his punishment. It answered true to two enhancement paragraphs: the first for a conviction of the felony offense of robbery and the second for a subsequent conviction of the felony offense of tampering with evidence. The jury sentenced Castillo to the minimum twenty-five years' confinement under the habitual felony offender statute. *See* TEX. PENAL CODE §§ 38.06(c)(1), 12.42(d). Castillo did not file a motion for new trial or any other post-judgment motion. This appeal followed.

### Evidence of Extraneous Offenses

In his first issue, Castillo contends that the trial court abused its discretion by admitting (1) Tabora's testimony that "Castillo had shown that he was a flight risk because he had previously evaded on foot"; and (2) the following exchange between the prosecutor and Farmer:

> Q.     Thank you. Just to be clear, I know that my colleague here
>         approached you. Just to be clear, what she told you was don't

> mention anything about the actual offense with the robbery; is
> that right?
>
> A.    That's correct.

Castillo contends that the statements were inadmissible under Texas Rules of Evidence 403 and 404(b).

To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court. TEX. R. APP. P. 33.1(a); *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). Failure to preserve error at trial waives a later assertion of that error on appeal, including complaints regarding the admissibility of evidence. *Fuller*, 253 S.W.3d at 232; *Saldano v. State*, 70 S.W.3d 873, 889 & nn.73–74 (Tex. Crim. App. 2002) (citations omitted).

Significantly, Castillo concedes that defense counsel did not object to the statements in the trial court. He nevertheless attempts to excuse this failure to object on the ground that the court was "well aware" of his complaints from the motion in limine and his counsel's arguments to the court on that motion.

Castillo has not preserved error concerning those statements for appellate review. "It is axiomatic that motions in limine do not preserve error." *Thierry v. State*, 288 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (quoting *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd)). "A motion in limine, whether granted or denied, preserves nothing for appellate

6

review." *Griggs v. State*, 213 S.W.3d 923, 926 n.1 (Tex. Crim. App. 2007). That is because a motion in limine is a "preliminary matter." *Fuller*, 253 S.W.3d at 232. A grant of a motion in limine "is not a ruling that excludes evidence; rather, it merely requires the parties to approach the trial court for a definitive ruling before attempting to put on evidence within the scope of the motion in limine order." *Thierry*, 288 S.W.3d at 87. Such a ruling is, "by its nature, subject to reconsideration by the court throughout the course of the trial." *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). To preserve error on an issue subject to a motion in limine, a party must make an objection if and when the issue is raised during trial. *Fuller*, 253 S.W.3d at 232.

Thus, neither the order granting Castillo's motion in limine nor the arguments advanced in support of that motion sufficed to preserve error. *See id.* The trial court's order simply barred reference to the subjects at issue "unless and until" the State's attorney first approached the bench and procured a ruling from the court "on the admissibility of such evidence." *See Thierry*, 288 S.W.3d at 87. It was not a final ruling on the admissibility of evidence.

That is not to say that the grant of a motion in limine is of no consequence. If a party violates a motion in limine, then the "trial court may apply the sanctions of contempt or take other appropriate action." *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972). But any remedy for violating a motion in limine lies with

7

the trial court alone. *Id.*; *Thierry*, 288 S.W.3d at 87. Appellate courts may only review error regarding the admission of evidence when properly preserved by timely objection. *Brazzell*, 481 S.W.2d at 131. The order on the motion in limine did not relieve Castillo of the requirement to timely object to evidence of prior extraneous offenses when it was offered during trial. *See Fuller*, 253 S.W.3d at 232.

Here, the record confirms that defense counsel did not object when Tabora testified that Castillo "previously evaded on foot." Nor did defense counsel object when the prosecutor briefly referenced "the actual offense with the robbery" in its exchange with Farmer. Because Castillo has not preserved error, we overrule his first issue. *See id.*

**Ineffective Assistance of Counsel**

In his second issue, Castillo argues that his trial counsel was ineffective for failing to object to the challenged testimony addressed above in his first issue.

Castillo asserts the same argument regarding both Tabora's testimony and the exchange between the State and Farmer without distinguishing them. He argues that his trial counsel knew that the statements were prejudicial because counsel sought to exclude the statements in the written motion in limine and in the bench conference on that motion prior to trial. He further argues that no strategic reason existed for his counsel's failure to object during trial. The State responds that the evidence was

8

admissible and did not prejudice Castillo, and it further argues that the record is insufficient to assess counsel's performance.

## A.    Standard of Review and Governing Law

The Sixth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires "objectively reasonable representation," not "errorless counsel." *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate, by a preponderance of the evidence, that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An appellant must prove both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.") (citations omitted).

To satisfy the first prong, Castillo must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second prong, Castillo must demonstrate prejudice, or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142.

We "indulge a strong presumption" that counsel's performance fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that the challenged action might be considered "sound trial strategy." *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. Our review of trial counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142 (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)); *see Strickland*, 466 U.S. at 689–90 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable

10

competence." *Lopez*, 343 S.W.3d at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)).

In most cases, the record on direct appeal is generally undeveloped and thus inadequate to show that trial counsel was not effective.[2] *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *see Thompson*, 9 S.W.3d at 813 ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

---

[2] Claims of ineffective assistance of counsel rejected on direct appeal for "lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (stating that where "alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record") (citation omitted).

## B.     Officer Tabora's Testimony

As in most direct appeals, the record here is inadequate to show that trial counsel's performance fell below an objective standard of reasonableness under the prevailing norms with respect to Tabora's testimony. *See Lopez*, 343 S.W.3d at 142; *see also Menefield*, 363 S.W.3d at 592–93 (stating that record on direct appeal is generally undeveloped and thus inadequate to show ineffective assistance of counsel). Castillo has not demonstrated that defense counsel's conduct was so "outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593.

Castillo invokes Rule 404(b), which states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But as Castillo acknowledges, Rule 404(b)(2) states that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

As stated above, Tabora testified at trial that two officers escorted Castillo to the hospital, which was "not normal," because "Castillo had shown that he was a flight risk because he had previously evaded on foot." Neither Tabora nor the State elaborated on the comment. Defense counsel did not object. The record on appeal

12

does not indicate why defense counsel did not object to the testimony. *See Lopez*, 343 S.W.3d at 142. Defense counsel was silent on the issue during trial, and Castillo did not file a motion for new trial or other post-judgment motion. Thus, the record is silent on counsel's reasons for not objecting to Tabora's testimony. *See id.*

Without an opportunity to explain his actions, we cannot find that defense counsel's performance was deficient unless the conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593. Given the brevity of Tabora's testimony about a "prior" evasion on foot, it is unclear whether that testimony was inadmissible under Rule 404(b)(1) or admissible under Rule 404(b)(2). Moreover, Castillo has not shown that the testimony bore no relevance to any fact of consequence in the case other than character conformity. *See Martin v. State*, 144 S.W.3d 29, 31 (Tex. App.—Beaumont 2004) (stating that character evidence may be admissible when relevant to a non-character-conformity fact of consequence), *aff'd*, 173 S.W.3d 463 (Tex. Crim. App. 2005). Likewise, Castillo has not demonstrated that this brief reference created any danger of undue prejudice that substantially outweighed the probative value of the testimony, so as to merit exclusion under Rule 403. *See* TEX. R. EVID. 403.

But even assuming *arguendo* that the testimony was inadmissible, the record is insufficient to overcome the presumption that defense counsel's failure to object constituted sound trial strategy. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d

at 142. Following Tabora's brief mention of Castillo's prior evasion on foot, the prosecution immediately steered Tabora away from the subject. Defense counsel may well have decided not to object to the testimony to avoid drawing further attention to it. *See Strickland*, 466 U.S. at 689–90 (stating that counsel may provide effective assistance in any given case in "countless ways"); *Ex parte Bryant*, 448 S.W.3d 29, 41 (Tex. Crim. App. 2014) (concluding that defense strategy of declining to object so as to avoid drawing jury's attention "may be particularly useful when, for example, only a passing, but possibly objectionable, reference is made and the defense attorney believes that the reference would largely go unnoticed").

Even if Castillo had satisfied the first *Strickland* prong, he has not satisfied the second prong by demonstrating that there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *See Strickland*, 466 U.S. at 687, 694; *Lopez*, 343 S.W.3d at 142. Significantly, the prosecutor asked Tabora no follow-up questions on the subject of any prior evasion, turning his attention instead to Tabora's role in transporting Castillo to the hospital and the events that occurred there. That testimony—coupled with Williams's testimony describing how Castillo, after being transported to the hospital while in custody, led the officers in a chase across the hospital grounds—provided the jury with adequate evidence to convict Castillo of the charged offense.

Given this evidence, Castillo has not demonstrated a reasonable possibility that the result would have been different had defense counsel succeeded in excluding Tabora's testimony that Castillo had previously evaded on foot. *See Lemons v. State*, 426 S.W.3d 267, 272–73, 274 (Tex. App.—Texarkana 2013, pet. ref'd) (considering admissibility of extraneous offense evidence under Rule 404(b) in determining whether trial counsel was ineffective and concluding that "ample evidence" supported jury's verdict and thus appellant could not show that result of proceeding would have been different if extraneous offense was not admitted).

Castillo does not address this evidence of guilt. Instead, he argues that

> there is a reasonable probability that, but for defense counsel's deficiency, the result of the trial would have been different. Specifically, the evidence that Appellant was some mastermind moving large caches of cocaine, marijuana, and methamphetamine throughout the country, and threatening his underlings with harm, even to the point of kidnapping, presented him in an exceedingly bad light to the jury. Surely, it is likely that a juror troubled by the question of whether or not Appellant was in custody at the time of the incident would be far less apt to insist on an acquittal after hearing that Appellant had engaged in virtually the same criminal behavior previously in "evading arrest" on foot, and that, at the time of the incident, he was charged with the very serious offense [of] robbery.

The record reveals that the State did not present any evidence about Castillo's supposed drug trafficking, kidnapping, or terroristic threats to the jury. Castillo has not satisfied the second *Strickland* prong.

15

## C. Prosecution's Exchange with Officer Farmer

Castillo asserts the same arguments regarding counsel's failure to object to the following exchange between the prosecution and Farmer:

Q.  Introduce yourself to the jury.

A.  Yes. My name is Charles Farmer. I've been with the Houston Police Department for 11 years now and patrol at northwest.

Q.  Thank you. Just to be clear, I know that my colleague here approached you. Just to be clear, what she told you was don't mention anything about the actual offense with the robbery; is that right?

A.  That's correct.

On the record before us, Castillo has not shown that defense counsel's failure to object to this exchange constituted conduct so "outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593. Neither the prosecutor nor Farmer specified that the "robbery" referred to any allegation made against or crime committed by Castillo. Due to the motion in limine, no person had mentioned the word "robbery" to the jury before that point. And no one mentioned anything about a robbery throughout the remainder of the guilt-innocence phase of the trial.

Under these circumstances, without knowing defense counsel's motivations, defense counsel may well have decided that objecting after the jury had already heard the testimony would only draw attention to the State's off-hand comment, and that the sound trial strategy was to remain silent. *See Ex parte Bryant*, 448 S.W.3d

16

at 41; *Menefield*, 363 S.W.3d at 593 (stating that trial counsel should ordinarily be afforded opportunity to explain action before being denounced as ineffective). We conclude that Castillo has not met his burden on this record to show that counsel's performance was deficient. *See Lopez*, 343 S.W.3d at 142. And for the reasons given above, we conclude that Castillo has not demonstrated prejudice due to any deficient performance on this record.

We overrule Castillo's second issue.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).