# NO. 12-14-00274-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON KEIONE WILLIAMS,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Brandon Keione Williams appeals his conviction for evading arrest or detention with a vehicle, for which he was sentenced to imprisonment for seven years. Appellant raises one issue challenging the trial court's admission of certain questions and statements he made while in police custody. We affirm.

## BACKGROUND

Appellant was charged by indictment with evading arrest or detention with a vehicle. He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that Deputy Johnny Gorden attempted to initiate a traffic stop of a vehicle for speeding and expired registration. The vehicle did not stop, but continued travelling to the next town. Once inside the city limits, the vehicle began travelling at rates of speed over 135 miles per hour. The vehicle finally came to a stop after crashing into a series of storage buildings. Appellant exited the vehicle and ran. Gorden made sure no one else was in the vehicle and then chased after Appellant. Eventually, Gorden and another police officer caught Appellant and arrested him.

Ultimately, the jury found Appellant "guilty" of evading arrest or detention with a vehicle and assessed his punishment at imprisonment for seven years. This appeal followed.

<u>**ADMISSIBILITY OF EVIDENCE**</u>

In Appellant's sole issue, he complains that his statements to Deputy Gorden at the scene of the arrest are inadmissible because they are products of a custodial interrogation without the provision of *Miranda*[1] warnings.

## Standard of Review and Applicable Law

Generally, we review a trial court's decision to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling admitting evidence unless that ruling falls outside the zone of reasonable disagreement. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

Under *Miranda*, the government may not use any statements "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. "Interrogation" refers to (1) express questioning and (2) any words or actions of the police, other than those normally attendant to arrest and custody, that police should know are reasonably likely to elicit an incriminating response from the suspect. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)).

The *Miranda* warnings protect suspects from the "inherently compelling pressures" associated with police interrogation. *See Miranda*, 384 U.S. at 467. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 478. "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *Id.*

## Analysis

It is undisputed that Appellant made certain statements while in police custody and before he was read the *Miranda* warnings. What is disputed is whether Appellant's statements stemmed from custodial interrogation.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On direct examination, the State asked Deputy Gorden, "And when you told [Appellant] he was under arrest, did you ask him anything?" Deputy Gorden responded, "Yes, sir. I asked him why he ran." Defense counsel objected and requested a hearing on the admissibility of Appellant's statements. The trial court granted the hearing.

At the hearing, the following testimony and rulings occurred:

PROSECUTOR: [Y]ou advised him he was under arrest; is that correct?

GORDEN: Yes, sir.

PROSECUTOR: Okay. Did he make any statements to you that were not the result of questioning, but were statements that he made to you without being questioned?

GORDEN: Yes, sir. He asked why he was getting pulled over.

PROSECUTOR: Okay. And what did you say in response?

GORDEN: I think I told him he was speeding and for his registration, is what it was.

PROSECUTOR: Okay. And then, did he say anything in response to your answer?

GORDEN: He asked if he would have pulled over, would he have got a warning and let go.

PROSECUTOR: And what did you tell him?

GORDEN: I told him if he had a good driver's license and no warrants, that he would have been let go.

PROSECUTOR: Okay. And then, did he advise you about anything else without being questioned?

GORDEN: Yes, sir. He advised me that he had a warrant, that's why he didn't stop.

PROSECUTOR: Okay. And were any of these statements that he made to you a result of questioning by you?

GORDEN: No, sir.

. . . .

DEFENSE COUNSEL: [Y]ou told the jury that you asked [Appellant] why he ran. Did you, in fact, ask him why he ran?

GORDEN: If I can—I can look at my report. If it's in my report, I asked him.

DEFENSE COUNSEL: You can review your report.

GORDEN: [Pausing] I don't see it in there.

3

DEFENSE COUNSEL:     Okay. Did you ask him why he ran?

GORDEN:     I possibly did, yes, sir.

. . . .

GORDEN:     All the stuff that was going on, you don't remember everything that happens at the moment.

PROSECUTOR:     So, are you saying you did ask him, or you did not, or—I mean, that's kind of the—

GORDEN:     If I can remember correctly, I don't have it in my report that I asked him, but I do remember him asking why he got—I told him he was under arrest, and he started asking me why he got pulled over.

PROSECUTOR:     So, you're saying he brought that up without you questioning him?

GORDEN:     Yes, sir. Yes, sir, I did—I explained to him he was under arrest, and then he started asking questions.

. . . .

TRIAL COURT:     [T]here may have been a question, he's not sure, there's a possibility of—of one question, if he asked him why he ran. So, anything that would derive from that question is objectionable. But the other questions, and I don't know if he remembers exactly, but if they were in response to—if they were just responses to the defendant's questions, then they're not objectionable. So, I'm going to instruct the witness that he can testify to whatever the defendant said to him in question form. Okay? But you may not answer any testimony that may have derived from your asking a question.

. . . .

DEFENSE COUNSEL:     Judge, I believe that the question was that the officer testified that he very well could have asked him *Why did you run?* And I think the State is saying *Well, his answer was because he had a parole hold.* I mean, I think that seems to be a direct answer to the question.
. . . .

TRIAL COURT:     Officer, when he told you he was on parole, that's why he was running, it was in response to a question you asked, or a question he asked?

GORDEN:     He just freely gave that information.

TRIAL COURT:     Do you have any idea why?

GORDEN:     He kept asking me to let him go.

TRIAL COURT:     But it was not the result of interrogation or questioning by you?

GORDEN:     No, sir. He was asking me more questions. I—He asked me why he was getting pulled over, I answered his question on that, and it went from there. I never asked any questions like that.

. . . .

4

DEFENSE COUNSEL: If you would have asked *Why did you run*, which is what you testified to the jury, when would you have asked him *Why did you run?*

GORDEN: Probably whenever—either whenever we got to the jail, or whenever we got back to the car and I Mirandized him.

DEFENSE COUNSEL: You didn't tell us it was when you got back to jail. You told us it was—

GORDEN: No, I—Right then, I wasn't saying that that's when it happened. It happened after we had the fight with him on the ground to get him into custody, and he was asking us to let him go, to let him make it, and then he wanted to know why he was getting pulled over.

. . . .

TRIAL COURT: I'll let him testify to the response—the questions and the responses he gave on questions propounded by the defendant.

At trial, with the jury present, Deputy Gorden testified as follows regarding Appellant's statements:

PROSECUTOR: What statements did he make to you that were not the result of questioning to him?

GORDEN: After I explained to him he was under arrest, he wanted to know why he was getting pulled over.

PROSECUTOR: Okay. And what did you tell him?

GORDEN: I told him he was getting pulled over for speeding, and his registration.

PROSECUTOR: Okay. And did he say anything in response to your answer?

GORDEN: He said he had a warrant out.

Appellant argues that every statement or question given by him at the scene after the question "Why did you run?" is inadmissible and should have been excluded. He contends that his statements about why he was pulled over and that he had a warrant were made in response to custodial interrogation by the police. But this assertion is in contrast with Deputy Gorden's testimony at the hearing. Deputy Gorden directly testified that Appellant's statements were not the result of any questioning. Furthermore, he testified that if he asked Appellant why he ran, it was after he got Appellant back to the car or to the jail, not before Appellant made the statements. We conclude that the trial court did not abuse its discretion by admitting the

statements. *See id.* ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."). Accordingly, we overrule Appellant's sole issue.

**DISPOSITION**

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered November 18, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 18, 2015**

**NO. 12-14-00274-CR**

**BRANDON KEIONE WILLIAMS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court
of Anderson County, Texas (Tr.Ct.No. 31599)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*